UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

D**ARRYL** J**OHNSON**,

        Plaintiff,                      Case No. 1:20-cv-791

v.                                            Honorable Paul L. Maloney

U**NKNOWN** M**ILLER** et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains, however, occurred at the Michigan Reformatory (RMI) in Ionia,

Ionia County, Michigan.  Plaintiff sues the following RMI officials:  Deputy Warden F. Artis; Sergeants Unknown Bradford and Unknown Briciford; and Correctional Officers Unknown Miller, Unknown May, and Unknown O'Connell.

Plaintiff alleges that, on September 18, 2016, Defendants Miller, May, and O'Connell brutally assaulted him on two occasions.  As Plaintiff was returning to his cell from lunch, Defendant Miller asked what was in his hand.  Plaintiff responded that he only had his hat.  Miller demanded that Plaintiff come over and show what was in his hand.  Plaintiff walked toward Defendant Miller and turned his hat inside out so Miller could see.  Defendant Miller then asked why Plaintiff had an attitude.  Plaintiff responded, "That is my personal busines, it's not your business."  (Compl., ECF No. 1, PageID.3.)  Plaintiff started to walk away, but Defendant Miller stated, "I did not tell you that you can leave."  (*Id.*)  Plaintiff responded that he had done what Miller asked.  Defendant Miller yelled, "You have a smart mouth."  Seconds later, Defendants May and O'Connell arrived, and Defendant Miller informed them, "[W]e have a smart ass to go." (*Id.*)  Defendant Miller then struck Plaintiff in the jaw with a closed fist.  As Plaintiff was falling, either Miller or an unknown correctional officer hit Plaintiff in the face, while May and O'Connell tackled Plaintiff.  Defendants May and O'Connell slammed Plaintiff to the concrete floor.  Plaintiff yelled that he was not resisting.  Either Defendant May or Defendant O'Connell placed his shoe on Plaintiff's neck, while the other put his knee in Plaintiff's back.  The officers then tightly handcuffed Plaintiff so that the cuffs dug into Plaintiff's wrists.

Defendants May and O'Connell pulled Plaintiff off the floor.  Defendant May then grabbed Plaintiff in the chest area with one hand, while hitting Plaintiff in the face with the other.  Either May or O'Connell hit Plaintiff in the back of the head.  During the assault, multiple other

2

prisoners called out, "He's not resisting, you don't have to beat him like that!" (*Id.*) While Plaintiff was being transferred from unit J-4 to I-1, cell 1, he allegedly feared for his life.

Once Plaintiff arrived at unit I-1, Defendants Bradford and Briciford visited Plaintiff and took pictures of Plaintiff's face and the injury to Plaintiff's wrists. Before leaving the unit, Defendant Bradford told unit staff that Plaintiff needed medical attention. Once Bradford left, unidentified correctional officers rushed into Plaintiff's cell and kicked and punched him, causing further injury. Plaintiff suffered bruises to his face and wrists, a broken jaw, and muscle spasms in his neck and back.

Plaintiff alleges that he sat in his cell for three to four days without receiving medical attention. At that point, Plaintiff was transferred to the Saginaw Correctional Facility. At intake, Plaintiff's medical condition was assessed, and it was determined that he needed emergency medical attention, including surgery.

Plaintiff allegedly file a timely grievance (No. 1703-0446-116) about the excessive use of force, which RMI Grievance Coordinator K. Miller (not a Defendant) refused to process, in part because Plaintiff was transferred two days after the incident. When Plaintiff arrived at the Chippewa Correctional facility, he filed another grievance against the RMI Correctional Officers who had assaulted him. Defendant Artis signed the grievance denial, on the ground that it was not timely. Plaintiff contends that he appealed the grievance denial to Step III, but it was again deemed untimely. Plaintiff alleges, however, that he never received a receipt or response.

Plaintiff previously filed a civil rights action in the Eastern District of Michigan, concerning the incidents described in the complaint, *see Johnson v. Miller et al.*, No. 2:19-cv-11961 (E.D. Mich.), which was later transferred to this Court, *see Johnson v. Miller et al.*, No. 1:20-cv-237 (W.D. Mich.). In an order issued on October 16, 2019 (1:20-cv-237, ECF No. 7), the

Eastern District dismissed the complaint against Defendants Artis, Bradford, and Briciford for failure to state a claim.  Nothing more was done with the case until four months later, when, on February 20, 2020, the Eastern District of Michigan stayed the case for Pro Se Prisoner Early Mediation Program.  (1:20-cv-237, ECF No. 8.)  The order indicated that the case had not been formally served and that service would only be ordered if the case survived mediation.  (*Id.*)  The Michigan Attorney General entered a limited appearance, solely for purposes of the Pro Se Prisoner Early Mediation Program; Defendants did not waive service of process.  (1:20-cv-237, ECF No. 9.)  On March 11, 2020, Defendants May, Miller, and O'Connell requested exclusion from the mediation process, because the complaint was filed in the wrong venue.  (1:20-cv-237, ECF No. 10.)  The Eastern District transferred the action to this Court on March 17, 2020, and denied the motion to exclude from mediation as moot.  (1:20-cv-237, ECF No. 11).

Upon initial review of the complaint, this Court referred the case to its own Pro Se Prisoner Early Mediation Program.  (1:20-cv-237, ECF No. 15.)  The order expressly states that defendants entering a limited appearance do not waive any defenses or objections, including the lack of service.  (*Id.*)  The Attorney General again entered a limited appearance on behalf of Defendants, strictly for the purpose of the mediation.  Defendants, through counsel, then moved to exclude the case from early mediation.  (1:20-cv-237, ECF No. 17.)

In an order issued on April 22, 2020, the Court lifted the mediation stay.  In accordance with W.D. Mich. LCivR 10.4 and Administrative Order 03-029,[1] the Court directed Plaintiff to provide, within 14 days, three copies of the complaint for service on Defendants Miller,

---

[1] When service is to be made by the United States Marshal, as in this case, the Court's local rules require litigants to provide sufficient copies of their documents for service when the documents are filed.  W.D. Mich. LCivR 10.4. Under Administrative Order 03-029, Plaintiff was excused from providing additional copies of his complaint until the Court determined that service was warranted.

4

May, and O'Connell or to explain why he was unable to present those copies. (*Id.*, ECF No. 20.) Plaintiff, however, failed to comply with the Court's order to provide copies or to explain his failure to do so. As a consequence, on May 20, 2020, the Court issued an order and judgment, dismissing the case without prejudice, for lack of prosecution and failure to comply with the Court's order. (*Id.*, ECF Nos. 21-22.) Plaintiff sought to re-open the case (*id.*, ECF No. 23), which the Court denied on June 4, 2020 (*id.*, ECF No. 24), because, even in his motion to re-open, Plaintiff neither provided the copies nor explained why he did not provide the copies.

In the instant case, Plaintiff again sues all six Defendants named in Case No. 2:19-cv-11961 (E.D. Mich.) / Case No. 1:20-cv-237 (W.D. Mich.). Plaintiff seeks injunctive relief in the form of investigation and termination of all Defendants, together with compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Defendants Artis, Bradford, & Briciford

Plaintiff sues Defendants Artis, Bradford, and Briciford for their failures to properly discipline Defendants Miller, May, and O'Connell, their subordinates. He also alleges that Defendants Artis, Bradford, and Briciford failed to supervise their subordinates and failed to adequately investigate or respond to Plaintiff's grievance against Defendants Miller, May, and O'Connell.[2]

---

[2] The Court notes that, although the claims against Defendants Artis, Bradford, and Briciford were dismissed with prejudice in the Eastern District's nonfinal order of October 16, 2019, the case itself was dismissed without prejudice for failure to comply with the Court's order. Because the final order—the judgment—was without prejudice, the Eastern District's order of partial dismissal has no preclusive effect. *See, e.g., Infocision Mgmt. Corp. v. Found. For Moral Law, Inc.*, Nos. 5:08cv1342/5:08cv1412, at *3 (N.D. Ohio Jan. 14, 2009) (dismissal without prejudice does not convert nonfinal order partially dismissing on the merits into a final judgment on the merits) (citing *Hall v. Gibson Greetings, Inc.*, 971 F. Supp. 1162, 1163-64 (S.D. Ohio 1997) (grant of summary judgment with prejudice on only some claims does not have preclusive effect where the final order of dismissal is without prejudice).

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Artis, Bradford, and Briciford engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## IV.     Defendants Miller, May, & O'Connell

Plaintiff alleges that, on September 18, 2016, Defendants Miller, May, and O'Connell beat him without reason and/or used excessive force against him, in violation of the Eighth Amendment. Plaintiff's claims against these Defendants, however, are barred by the statute of limitations.

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the

7

claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[3]

Plaintiff's complaint is untimely. He asserts claims arising out of conduct that occurred on September 18, 2016. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, his claims accrued on September 18, 2016. However, Plaintiff did not file the instant complaint until August 13, 2020,[4] nearly a year past Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* Mich. Comp. Laws § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

The statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000).

---

[3] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. §1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

[4] Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner signed his complaint on August 13, 2020, and it was received by this Court on August 21, 2020. The Sixth Circuit has held that the day a petitioner signs his complaint may be presumed to be the date on which he handed it to authorities. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006), *Bomer v. Bass*, 76 F. App'x 62, 63 (6th Cir. 2003) (order); *Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (order)).

The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999). This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted. *See Harris v. Hegmann*, 198 F.3d 153, 157-59 (5th Cir. 1999) (per curiam); *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999).

*Id.* at 596.

Michigan Department of Corrections Policy Directive (PD) 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.[5] Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after

---

[5] The MDOC revised PD 03.02.130 on March 18, 2019, superseding the prior version, which became effective on July 9, 2007. Because the events underlying Plaintiff's complaint occurred in 2016, the July 9, 2007, version applied to any grievance arising out of the events.

receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

    Plaintiff does not provide complete information about his attempts to exhaust his administrative remedies. Nevertheless, under the MDOC policy, the entire grievance process should not have taken longer than 120 days from the date of the incident, a date that would have expired in January 2017. Under that scenario, Plaintiff would still have had until January 2020—seven months before he actually filed his complaint—in which to bring his lawsuit. As a consequence, tolling of the statute of limitations during the exhaustion of administrative remedies does not render Plaintiff's complaint timely.

    Arguably, Plaintiff may intend to claim that the statute of limitations was tolled during the pendency of his earlier-filed action. That action was filed in the Eastern District of Michigan on or about June 24, 2019. *See Johnson v. Miller et al.*, No. 2:19-cv-11961 (E.D. Mich.) (ECF No. 1, PageID.21).). The case was dismissed without prejudice by this Court on May 20, 2020 (1:20-cv-237, ECF Nos. 21-22), because Plaintiff failed to provide copies for service of the complaint on Defendants Miller, May, and O'Connell.

    Michigan provides for tolling of the statute of limitations during the pendency of an earlier-filed lawsuit that was not adjudicated on the merits. Under Mich. Comp. Laws § 600.5856, the statutes of limitations or repose are tolled in any of the following circumstances:

> (a) At the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules.

(b) At the time jurisdiction over the defendant is otherwise acquired.

(c) At the time notice is given in compliance with the applicable notice period under [Mich. Comp. Laws § 600.2912b], if during that period a claim would be barred by the statute of limitations or repose; but in this case, the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given.

*Id.* The provision allows a plaintiff to avoid the bar of the statute of limitations, where a prior lawsuit between the parties was not adjudicated on the merits. *Buscaino v. Rhodes*, 189 N.W.2d 202, 205 (Mich. 1971).

Tolling provisions protect a plaintiff's right to bring an action and prevent a defendant from defeating a claim by absenting himself from the jurisdiction. *Frazier v. Castellani*, 342 N.W.2d 623 (1983). By contrast, the statutes of limitation are designed to promote a plaintiff's diligence, to prevent the litigation of stale claims, and to establish a reasonable, but limited, time for bringing an action. *Id.* Exceptions to statutes of limitation are strictly construed. *Mair v. Consumers Power Co.*, 348 N.W.2d 256, 259 (Mich. 1984); *Lausman v. Benton Twp.*, 426 N.W.2d 729, 731 (Mich. Ct. App. 1988) (citing *Mair*, 348 N.W.2d at 259).

Under the clear terms of the provision, Plaintiff is not entitled to tolling under Mich. Comp. Laws § § 600.5856(a), because the complaint was never served on Defendants. Indeed, the case was dismissed for failure to comply with the requirement that Plaintiff provide copies for service of the complaint. Moreover, subsection (c) of the provision is inapplicable, because Plaintiff's action has nothing to do with Mich. Comp. Laws § 600.2912. As a consequence, the question of tolling turns on whether jurisdiction over Defendants was "otherwise acquired" within the meaning of the statute.

The Michigan Supreme Court, in *Mair*, 348 N.W.2d at 260, held that the phrase "jurisdiction otherwise acquired," as employed in Mich. Comp. Laws § 600.5856(b),[6] refers to the ways of acquiring jurisdiction other than by service of process, such as consent of the defendant. Similarly, in *Napier v. Hawthorn Books, Inc.*, 449 F. Supp. 576 (E.D. Mich. 1978), the court held that an earlier version of the tolling provision of Mich. Comp. Laws § 600.5856(b) did not toll the limitations period where the defendants were never properly served and did not waive service of process or otherwise consent to be sued. The court held that, where the defense of improper service was preserved, the court did not obtain jurisdiction over the defendants for purposes of the statute. *Id.* at 578-79.

In the instant case, neither the Court's orders nor the limited appearances of Defendants through counsel for purposes of mediation waived service of process. Indeed, this Court's order referring the case to mediation expressly preserved the defense of improper service. Plaintiff therefore is not entitled to tolling under Mich. Comp. Laws § 600.5856(b), and his complaint is barred by the statute of limitations.

As the Supreme Court has recognized, "[i]f the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ." *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (holding that if, on the face of a complaint, the allegations show that relief is barred by an affirmative defense (lack of exhaustion), the complaint is subject to dismissal for failure to state a claim) (citing *Jones*, 549 U.S. at 215); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (when a complaint on its face is barred by the statute of limitations, it

---

[6] The *Mair* Court considered an earlier version of the statute, under which subsection (b), while identical in language to the present version, was numbered subsection (2).

12

fails to state a claim).  Because Plaintiff's complaint was not timely filed under the applicable three-year period of limitations, it will be dismissed for failure to state a claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   September 24, 2020                                /s/ Paul L. Maloney
                                                          Paul L. Maloney
                                                          United States District Judge